IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT WESTBERRY, and JARED STUBBLEFIELD, individually, and on behalf of all others similarly situated under 29 USD 216(b),<br><br>Plaintiffs,<br><br>v.<br><br>GUSTECH COMMUNICATIONS, LLC, and GUSTAVO SANTAMARIA, Individually<br><br>Defendants. | Civil Action No. 3:17-cv-03162-D |

**PLAINTIFFS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**

Plaintiffs worked as satellite installation technicians for Defendant GusTech Communications, Inc. ("Gustech") and Gustavo Santamaria, performing installations for DirecTV customers out of a GusTech facility in Garland, Texas.  GusTech is a South Carolina corporation, has its headquarters in South Carolina, and also performs DirecTV installations in South Carolina, North Carolina, and Florida.[1]  Plaintiffs brought this case on behalf of themselves and all others similarly situated GusTech satellite technicians in the United States alleging that Gustech misclassified its satellite technicians as independent contractors and violated the Fair Labor Standards Act ("FLSA"), 28 U.S.C. 201 et seq., by failing to pay them minimum wage and overtime.

---

[1]   Gustavo Santamaria is the owner and operator of Gustech and resides in South Carolina. See Compl. at ¶ 16.

1

Plaintiffs filed their lawsuit in this Court on November 17, 2017.  ECF No. 1.  On February 21, 2018, satellite installation technicians who worked for GusTech in South Carolina and North Carolina filed a nearly identical lawsuit in the United States District Court for the District of South Carolina. [2]  See Burrell v. Gustech Communications, LLC, No. 18-00508 (D.S.C.) (Complaint attached as Ex. A).

On March 5, 2018. the plaintiffs in Burrell filed a motion for issuance of notice pursuant to § 216(b) of the FLSA to all of GusTech's technicians across the United States.  As of today, that motion has been fully briefed.  On April 10, 2018, Plaintiffs in this case filed their motion for issuance of notice pursuant to § 216(b).  ECF No. 24.

Plaintiffs now move pursuant to 28 U.S.C. § 1404(a) to have this case transferred to the District of South Carolina so that it can be consolidated with the Burrell case.  Transfer to South Carolina is plainly appropriate here because GusTech is headquartered in South Carolina, Mr. Santamaria resides in South Carolina, and there is already a related case pending in the District of South Carolina.  Courts generally grant motions to transfer an action to the district where the defendant is headquartered, even over the objections of the plaintiffs, which is not the case here. See, e.g., Kiley v. Medfirst Consulting Healthcare Staffing, No. 1: 17-cv-00470-CL, ECF No. 56, p. 19 (D. Ore. Oct. 13, 2017) (granting Defendant's Motion to Change venue based in part on the fact that Defendant was headquartered in Alabama, and transferring case to Alabama district

---

[2]   In addition to the same overtime claims pending in this lawsuit, the plaintiffs in Burrell have asserted claims pursuant to South Carolina and North Carolina state law for deductions that Gustech made from their pay for, among other things, missing inventory, problems with installations, failed inspections, or for return service calls.  These claims are brought pursuant to Rule 23 on behalf of  classes of satellite technicians who worked for Gustech in South Carolina and North Carolina.  The named Plaintiffs in this case and the other technicians for worked for Gustech in Texas would not have deductions claims under Texas law.

court); See also Oshikoya v. Leidos Health, LLC, No. 1:17-cv-00896-LMB-MSN, ECF No. 33 (E.D. VA Sept. 11, 2017) (granting Defendant's request to transfer case to Southern District of Indiana, where it is headquartered). Devinney v. Mindlance, Inc., 2013 WL 3967613, at *2 (E.D. Pa. Aug. 2, 2013) (granting Defendant's motion to transfer and noting that "venue would be proper where defendant is headquartered."); Holiday v. Bally's Park Place, Inc., 2007 WL 2600877, at *2 (E.D. Pa. Sept. 10, 2007 (granting motion to transfer to district of New Jersey) ("It is clear that this action has a far stronger connection to the District of New Jersey where the accident occurred, where Defendant is headquartered and conducts business, and where the evidence is likely to be found.").

Plaintiffs, like defendants, "may seek a transfer for the convenience of the parties and in the interest of justice." Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc., 2003 WL 298799, at *3 (N.D. Tex. Feb. 10, 2003). A transfer in "the interest of justice" is particularly appropriate where "related cases involving the same issues are pending in another court." Id. at *5. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conductive to a race of diligence among litigants for a trial in the District Court each prefers." Id. (quoting Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1474 (1960)). That is precisely why Plaintiffs now seek to transfer venue to South Carolina.[3]

---

[3] Moreover, once the case is transferred to South Carolina, Plaintiffs in this case and those in Burrell will move to consolidate the cases. When considering a motion to consolidate pursuant to Fed. R. Civ. P. 42(a), "[t]he threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law." Cruickshank v. Clean Seas Co., 402 F. Supp. 2d 328, 340-41 (D. Mass. 2005) (emphasis in original). Any arguments related to consolidation, however, should only be raised before the transferee court. Cunningham v. Peters, 2008 WL 170008, at *5 (E.D. Tex. Jan. 16, 2008).

For these reasons and those discussed below, the Court should now grant Plaintiffs' motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

## ARGUMENT

A request to transfer a case to another district is governed by 28 U.S.C. § 1404(a), which states that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc., 2013 WL 9600333, at *2 (E.D. Tex. Mar. 21, 2013) (quoting In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir.2004) ("In re Volkswagen I "). That is plainly the case here because GusTech is headquartered in South Carolina. "A corporation is a citizen and therefore subject to personal jurisdiction in both its state of incorporation and the state of its principal place of business."[4] Norsworthy v. Mystik Transp., Inc., 430 F. Supp. 2d 631, 634 (E.D. Tex. 2006) (citing 28 U.S.C. § 1332(a)). Moreover, both this case and Burrell seek to vindicate the claims of satellite installation technicians who worked for GusTech in South Carolina, in addition to Texas, North Carolina,

---

[4]   At the same time, Plaintiffs continue to maintain that this case was properly filed in this Court given that Defendants perform installation services in Texas, operated a facility in Garland, Texas, and that Defendants' conduct in Texas, as well as South Carolina, gave rise to the Plaintiffs' claims in this lawsuit.

and Florida, where they worked under identical circumstances, and where many of the actions giving rise to the two pending lawsuits occurred in South Carolina. See, e.g, Decl. of Robert Westberry (attached as Ex. B); Decl. of Gary Burrell (attached as Ex. C).

"Most courts have accepted the view that plaintiffs, like defendants, may seek a transfer for the convenience of the parties and in the interest of justice." Moto Photo, Inc., 2003 WL 298799, at *3 (citing Washington Public Utility Group v. U.S. District Court, 843 F.2d 319, 327 (9th Cir.1987); Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir.1986); Leiker v. Jarvis Products Corp., 1990 WL 112974 at *1 (D.Kan. Jul. 10, 1990); Haren–Christensen Corp. v. M.S. Frigo Harmony, 477 F.Supp. 694, 698 (S.D.N.Y.1979); Weltman v. Fletcher, 431 F.Supp. 448, 450 & n. 2 (N.D.Ohio 1976). Courts generally permit a plaintiff to move for venue transfer when there is a change of circumstances or "the existence of similar litigation elsewhere make another venue more sensible."[5] Bobosky v. Adidas AG, 2010 WL 4853295, at *6 (D. Or. Oct. 8, 2010), report and recommendation adopted, , 2010 WL 4828392 (D. Or. Nov. 18, 2010) (citing Moto Photo, 2003 WL 298799, at *3 (holding that a related bankruptcy filing by defendant in another district represented an adequate change in circumstacnes); Johnson v. Am. Airlines, Inc., No. 79 C 5248, 1981 U.S. Dist. LEXIS 13215 (N.D. Ill. June 2, 1981) (granting plaintiffs' motion to transfer case from Illinois to Texas because similar litigation was already pending in Texas, because defendant, witnesses, and records were located in Texas, and because

---

[5] Normally, a plaintiff's choice of forum is given great deference, but courts have found this factor to be less significant where a plaintiff originally filed suit in a different district. See FPC Corp. v. Uniplast, Inc., 994 F.Supp. 945, 946 (N.D.Ill.1998) (stating that "it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice"). In this case, however, Plaintiffs are not seeking to forum shop or to put the Defendants at a disadvantage by transferring to the case to South Carolina. There is already a pending action in South Carolina, thus, Defendants will not suffer any prejudice, just the opposite, if both actions proceed in the same district.

5

considerable economies could be achieved by considering the cases together). The filing of Burrell by a separate group of technicians raising nearly identical claims against Defendants in their home state of South Carolina is a sufficient change in circumstances to justify transfer now. Moreover, as discussed below, transferring this case to Defendants' home state is certainly "more sensible," given that the Burrell case is already pending there. Bobosky, 2010 WL 4853295, at *6.

Once these threshold determinations are met, "§ 1404(a) requires consideration of 'the convenience of the parties and witnesses' and 'the interests of justice.'" Moore v. Payson Petroleum Grayson, LLC, 2018 WL 514258, at *3 (N.D. Tex. Jan. 23, 2018) (citing In re Volkswagen I, 371 F.3d at 203; In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) ("In re Volkswagen II"). To do so, "courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case." PersonalWeb Technolgies, LLC, 2013 WL 9600333, at *2 (citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir.1963); In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir.2009); In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir.2009). A review of the relevant factors clearly demonstrates that a transfer of venue to South Carolina is in the interests of justice.

### A. The Private Interest Factors Weigh Heavily In Favor of Transfer to South Carolina.

The private interest factors include: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. In re Volkswagen I, 371 F.3d at 203.

The relative ease of access to sources of proof factor "will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." PersonalWeb Technolgies, LLC, 2013 WL 9600333, at *3 (citing In re Volkswagen of Am., Inc., 545 F.3d 304, 314–15 (5th Cir.2008) ("In re Volkswagen II")). Indeed, the "Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer," which in this case is GusTech. Diem LLC v. BigCommerce, Inc., 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017) (citing In re Genentech, 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (emphasis added). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." Id. (quoting In re Genentech, 566 F.3d at 1345). Here, there can be no doubt the Defendants, the putative employers, will possess the lion's share of documents in this case – including a class list, pay records, contracts, time records (such as daily work logs), and customer complaints. Presumably, therefore, most of the relevant documents in this case can be presumed to be located at GusTech's headquarters in South Carolina.

Courts also look at "other practical problems," which "include those that are rationally based on judicial economy." Realtime Data, LLC v. Rackspace US, Inc., 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017). The "existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" In re Vicor Corp., 493 Fed.Appx. 59, 61 (Fed. Cir. 2012) (emphasis added). This factor strongly supports transfer because there is a related case which includes the same class members pending in South Carolina in Burrell.

Furthermore, it will be more efficient and less expensive for the Defendants to litigate the two related cases in a single district, which happens to be in their home state, than to have to

litigate two cases simultaneously in two different states. Thus, the private interest factors weigh heavily in favor of transfer to South Carolina. [6]

### B.   The Public Interest Factors Further Weigh Heavily In Favor of Transfer to South Carolina.

The public-interest considerations include: "(1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Greater Yellowstone Coal. v. Kempthorne, 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008) (citations omitted).

When analyzing the first factor, courts have held that the existence of a related pending case in another district weighs strongly in favor of transfer. Courts have held that as when a related case is pending in another district, "it is in the interest of justice that the principle of comity is upheld." Greater Yellowstone Coal. v. Kempthorne, No. CIV.A. 07-2111 (EGS), 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008). As the Supreme Court held, "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different

---

[6]   As for the availability of compulsory process to secure attendance of witnesses, this factor is likely neutral. Under the Federal Rules, a district court may compel attendance of a non-party witness at a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person" Fed. R. Civ. P. 45(c)(1)(A). Beyond 100 miles, non-party witnesses may be compelled to attend trial if they are in the state in which the district court sits and "will not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). "Regardless of where relevant witnesses are located," this factor is only relevant if there is some evidence that "compulsory process would be necessary to secure these witness' attendance at trial, making this factor neutral." Polaris Innovations Ltd. v. Dell, Inc., 2016 WL 7077069, at *10 (W.D. Tex. Dec. 5, 2016) (citing Healthpoint, Ltd. v. Derma Scis., Inc., 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013) ("[W]hile [Defendant] has mentioned certain witnesses that live in and around [the proposed venue], it has not argued that compulsory process would be necessary to secure their presence at trial. In the absence of such claims, this factor is neutral."). At this point, there is no evidence that compulsory process will be required.

District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conductive to a race of diligence among litigants for a trial in the District Court each prefers." Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 1474 (1960). The Burrell case is pending in the District of South Carolina and will be address all of the questions being raised in this lawsuit, including, most importantly, whether GusTech's satellite installation technicians were misclassified as independent contractors pursuant to the FLSA. Inconsistent rulings in this district and in the District of South Carolina would produce a non-sensical outcome for the parties, whose minimum wage and overtime claims are based on federal law that should be uniformly applied across jurisdictions. Thus, this factor overwhelmingly support transfer.

Furthermore, courts have held that so-called "local interests" favor trial in the location where the defendant has its corporate headquarters. See, e.g., PersonalWeb Technolgies, LLC, 2013 WL 9600333, at *11. However, Plaintiffs recognize that both Burrell and this lawsuit were brought on behalf of Texas workers, among others, and that as a result Texas also has a local interest in the outcome of this lawsuit. See Sarmiento v. Producer's Gin of Waterproof, Inc., 439 F. Supp. 2d 725, 731 (S.D. Tex. 2006) ("the State of Texas has a significant interest in exercising jurisdiction over Defendants because it has an interest in protecting its citizens from exploitation by nonresident employers"). However, given that Defendants are headquartered in South Carolina and that Plaintiffs are affirmatively seeking transfer to South Carolina, this factor should weigh in favor of transfer.[7]

---

[7] While courts have looked at the "relative congestion of the calendars" as a potential factor, "[t]his factor is the most speculative, and cannot alone outweigh other factors. Diem LLC v. BigCommerce, Inc., 2017 WL 6729907, at *5 (E.D. Tex. Dec. 28, 2017). The relevant caseload statistics, however, starkly show that transfer is in the interests of judicial economy. Excluding senior judges, the North District of Texas currently has nine active judges, while the

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' motion and transfer this case pursuant to 28 U.S.C. § 1404(a) to the District of South Carolina.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229 – telephone
(817) 887-1878 – fax
**ATTORNEY FOR PLAINTIFFS AND CLASS MEMBERS**

### Certificate of Conference

I certify that I conferred with Defendants' counsel regarding this motion and counsel for Defendants was unable to state whether he was opposed to this motion.

*/s/ Drew N. Herrmann*
Drew N. Herrmann

### Certificate of Service

I certify on May 7, 2018 a true and correct copy of the above and foregoing document will be served on all counsel of record, in accordance with the Federal Rules of Civil Procedure.

*/s/ Drew N. Herrmann*
Drew N. Herrmann

---

District of South Carolina currently has 10 active judges. According to statistics kept by the federal courts, however, as of May 31, 2017, the Northern District of Texas had 12,129 cases pending, or 1,347 pending cases per active judge. See http://www.uscourts.gov/sites/default/files/data_tables/fjcs_c1_0331.2017.pdf (attached as Ex. D). In South Carolina, meanwhile, as of May 31, 2017, there were 2,392 cases pending or an average of 239 pending cases per active judge. Thus, the Northern District of Texas has by far the more congested caseload.