IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT WESTBERRY, et al.,           §
                                     §
                    Plaintiffs,      §
                                     §   Civil Action No. 3:17-CV-3162-D
VS.                                  §
                                     §
GUSTECH COMMUNICATIONS,              §
LLC, et al.,                         §
                                     §
                    Defendants.      §

MEMORANDUM OPINION
AND ORDER

In this collective action seeking unpaid minimum wages and overtime pay under the

Fair Labor Standards Act of 1938 ("FLSA""), 29 U.S.C. § 201 *et seq.*, plaintiffs move to

transfer the case to the District of South Carolina, under 28 U.S.C. § 1404(a) for the

convenience of the parties and witnesses, in the interest of justice.  Concluding that the

balance of private and public interest factors weigh in favor of transfer and that judicial

economy will best be served if this case is transferred to the District of South Carolina where

a related FLSA action involving the same parties is pending, the court grants the motion.

I

Defendant GusTech Communications, Inc. ("GusTech") is a South Carolina

corporation that is headquartered in South Carolina.  Defendant Gustavo Santamaria

("Santamaria"), the owner and operator of GusTech, is an individual who resides in South

Carolina.

On November 17, 2017 plaintiffs Robert Westberry ("Westberry") and Jared

Stubblefield ("Stubblefield"), who performed satellite installations for DirecTV customers out of a GusTech facility in Garland, Texas, filed a putative collective action against GusTech in this court, alleging that GusTech had misclassified its satellite technicians as independent contractors and had violated the FLSA by failing to pay them minimum wage and overtime.  On February 21, 2018 two satellite technicians who worked for GusTech in South Carolina and North Carolina filed a similar suit in the District of South Carolina ("South Carolina Action") alleging, *inter alia*, claims for violations of the minimum wage and overtime provisions of the FLSA.[1]

On March 5, 2018 the plaintiffs in the South Carolina Action filed a motion for issuance of notice pursuant to 29 U.S.C. § 216(b) to all of GusTech's technicians across the United States.  On June 5, 2018 the magistrate judge hearing the South Carolina Action entered a report and recommendation recommending that the court certify a collective action under the FLSA as to "all individuals who worked as technicians for Gustech Communications in the states of Florida, North Carolina, South Carolina, or Texas during the past three years and who were misclassified as independent contractors."[2]  Ps. Reply Ex.

---

[1]In addition to their FLSA claims, the plaintiffs in the South Carolina Action bring claims under South Carolina and North Carolina state law for deductions that GusTech made from their pay and for unjust enrichment.  The plaintiffs in the South Carolina Action bring these additional claims under Fed. R. Civ. P. 23 on behalf of a class of satellite technicians who worked for GusTech in South Carolina and a class of satellite technicians who worked for GusTech in North Carolina.

[2]Objections to the magistrate judge's report and recommendation were filed on June 19, 2018. The parties have not advised this court whether the district judge adopted the report and recommendation or sustained the objections, in whole or in part.

A at 3.

On April 10, 2018 plaintiffs filed in this case a motion for issuance of notice pursuant to § 216(b),[3] seeking conditional certification of the following class: "[a]ll of GusTech Communications, LLC's satellite service and repair technicians who performed services on behalf of GusTech in Texas at any time within the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were classified as independent contractors." Ps. Mot. for Certification 1 (citation omitted). Plaintiffs now move under 28 U.S.C. § 1404(a) to transfer this case to the District of South Carolina, contending that, because GusTech is headquartered in South Carolina, Santamaria resides there, and there is already a related case pending there, the interests of justice and the convenience of the parties require that the case be transferred to that court. Defendants oppose the motion.

II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is

---

[3]Plaintiffs' motion for notice filed in this case is currently pending before the court.

merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, the court must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight."[4] *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The party seeking transfer must establish "good cause" for transferring the case, meaning that,

---

[4]

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Volkswagen I*, 371 F.3d at 203

"in order to support its claim for a transfer, [he] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (final brackets in original) (quoting § 1404(a)).

## III

The parties do not dispute, and the court holds, that plaintiffs could have brought this lawsuit in the District of South Carolina, where Santamaria and GusTech[5] both "reside," for venue purposes.

## IV

Before addressing the public and private interest factors, the court will determine the weight to be accorded plaintiffs' choice of forum. Ordinarily, "[t]he plaintiff's choice of venue is . . . entitled to deference." *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *Volkswagen II*, 545 F.3d at 315.[6] But when the plaintiffs file suit outside their home forum,

---

[5]Plaintiffs allege that GusTech is a South Carolina limited liability company that maintains its principal place of business in Fort Mill, South Carolina. Under 28 U.S.C. § 1391(c)(2), a corporate defendant is deemed to "reside," for venue purposes, in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question. "[A]lthough the wording of section 1391(c) only appears to apply to corporations, courts have held and it is generally accepted that unincorporated business associations such as partnerships and limited liability companies are analogous to corporations for venue purposes." *Feline Instincts, LLC v. Feline Future Cat Food Co.*, 2010 WL 4942188, at *5 (N.D. Tex. Dec. 6, 2010) (Means, J.) (quoting *Advocate Fin., L.L.C. v. Parker Interests, L.L.C.*, 2008 WL 2773650, at *1 (M.D. La. July 16, 2008)). It is undisputed that GusTech is subject to personal jurisdiction in the District of South Carolina.

[6]Some courts have noted that, although a plaintiff's choice of forum is "highly esteemed," "this factor becomes less significant where, as here, the plaintiff originally filed

the weight accorded to their choice of forum "is diminished." *Sivertson*, 2011 WL 4100958, at *4 (citations omitted).  Here, although plaintiffs appear to have initially filed suit in their home forum,[7] the forum to which they seek to transfer this suit is *not* their home forum,[8] and is therefore only entitled to "diminished" deference.  *See Sivertson*, 2011 WL 4100958, at

suit in another district." *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, 2003 WL 298799, at *4 (N.D. Tex. Feb. 10, 2003) (Kaplan, J.) (citation omitted) ("It is one thing to give great weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice." (citation omitted)); *see also Moore v. Payson Petroleum Grayson, LLC*, 2018 WL 514258, at *4 (N.D. Tex. Jan. 23, 2008) (Ramirez, J.) ("When, as here, the plaintiff is the movant seeking a § 1404(a) transfer, courts have explained that 'the burden should be at least as heavy on a plaintiff who seeks to change the forum that he or she had selected as it is when the defendant is the moving party,' although, '[a]t the same time, as with all Section 1404(a) determinations, the particular circumstances surrounding the transfer motion must be considered.'" (citation omitted)).  Nonetheless, "[m]ost courts have accepted the view that plaintiffs, like defendants, may seek a transfer for the convenience of the parties and in the interest of justice." *Moto Photo, Inc.*, 2003 WL 298799, at *3 (citing cases); *see also Volkswagen I*, 371 F.3d at 204 ("The Supreme Court has clearly indicated that either a defendant or a plaintiff can move for change of venue under § 1404(a) and that the same treatment and consideration should be given to the motion for transfer regardless of who the movant of that motion may be." (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990))).  Although district courts are divided on the question whether a plaintiff must show "changed circumstances" in order to prevail on a motion to transfer venue, *see Moore*, 2018 WL 514258, at *10 n.18, assuming *arguendo* that such a showing is required, plaintiffs have clearly demonstrated that the circumstances have changed since they filed this lawsuit: a suit involving substantially similar claims against the same defendants was filed in the District of South Carolina, and the plaintiffs in the South Carolina Action obtained a recommendation of conditional certification of a nationwide class that would include plaintiffs and the members of their proposed class.  Accordingly, the fact that plaintiffs did not *initially* file their suit in the District of South Carolina will neither diminish the weight this court affords plaintiffs' choice of forum nor will it weigh against transfer.

[7]Plaintiffs do not specifically allege that they reside in the Northern District of Texas, but they do assert that they worked, in part, at defendants' location in Dallas County.  *See* Compl. ¶ 20.

[8]Neither Westberry nor Stubblefield resides in South Carolina.

*4 (citations omitted).

Moreover, although this court has previously held that the "opt-in structure of collective actions . . . strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of an FLSA action," *Mallory v. Lease Supervisors, LLC*, 2018 WL 1457250, at *3 (N.D. Tex. Mar. 23, 2018) (Fitzwater, J.) (internal quotation marks omitted) (quoting *Salinas v. O'Reilly Auto., Inc*., 358 F.Supp.2d 569, 571 (N.D. Tex. Feb. 16, 2005) (Boyle, J.)), because the plaintiffs in this case are seeking to [represent a class of Texas plaintiffs and, potentially, to] consolidate their claims into a proposed nationwide collective action, the court is not convinced that their choice of the District of South Carolina should be given any special deference.  *See, e.g., Vassallo v. Goodman Networks, Inc*., 2015 WL 502313, at *2 (W.D. Tex. Feb. 5, 2015) ("The Court further notes that Plaintiff here seeks to certify as a class action under the FLSA, and that a plaintiff's choice of venue is generally accorded less deference when the plaintiff seeks to represent a class of individuals."); *Webb v. Settoon Towing, LLC*, 2012 WL 5967962, at *5 (S.D. Tex. Nov. 28, 2012) (stating that choice of forum should be given reduced weight in nationwide FLSA collective action). Accordingly, the court concludes that plaintiffs' choice of forum should not be given deference under the circumstances of this case.

V

The court now turns to the private interest factors.

A

The first private interest factor examines the relative ease of access to sources of

- 7 -

proof.   Plaintiffs maintain that, because defendants "will possess the lion's share of documents in this case—including a class list, pay records, contracts, time records (such as daily work logs), and customer complaints," and because most of the relevant documents can be presumed to be located at GusTech's headquarters in South Carolina, this factor weighs in favor of transfer.   Ps. Br. 7.   Defendants respond that plaintiffs have failed to provide any evidence that the particular pieces of evidence they speculate are located in South Carolina are, in fact, located there.   Moreover, defendants contend that there is no reason that any records that might be located in South Carolina cannot be made available in this forum electronically.

The court holds that this factor weighs slightly in favor of transfer.   "Although the technological convenience of e-discovery may diminish concerns associated with the location of evidence, it does not negate the significance of or eliminate consideration of this factor in a section 1404(a) transfer analysis." *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, 2015 WL 1037419, at *2 (N.D. Tex. Mar. 9, 2015) (Kinkeade, J.) (citations omitted); *see also Davis v. City of Fort Worth*, 2014 WL 2915881, at *3 (N.D. Tex. June 25, 2014) (Fitzwater, C.J.) ("Regardless whether technological advances and email service would make litigating this case in the Dallas Division *possible*, there is still a *greater* ease of access to sources of proof in Fort Worth.").   And while the court agrees that plaintiffs have failed to provide any evidence that GusTech's corporate records are located in South Carolina, GusTech does not contend that its records are *not* located there.   In any event, the presumption that relevant corporate documents will be found at a defendant's corporate

headquarters is not unfounded.  Moreover, defendants point to no documentary or other evidence located in the Northern District of Texas.  *See Smith's Consumer Prods.*, 2015 WL 1037419, at *2 (holding that first factor weighed in favor of transfer where party opposing transfer did not "specif[y] where any of its documentary proof is located . . . [and] merely arg[ued] that this factor is not given much weight in the analysis.").  Accordingly, the court concludes this factor weighs slightly in favor of transfer.

B

The second private interest factor examines the availability of compulsory process over witnesses.  Because plaintiffs have not identified any witnesses for whom compulsory process will be needed, the court finds that this factor is neutral.  *See Sivertson*, 2011 WL 4100958, at *5 (finding second factor was neutral because defendants failed to identify any witnesses for whom compulsory process would be needed).

C

The third private interest factor considers the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses."  *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor).  A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'"  *Sargent v. Sun Tr. Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812).  "The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must

make a general statement of what their testimony will cover." *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at \*4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at \*2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at \*3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Plaintiffs have failed to identify any witness for whom transfer will be more convenient.[9]  Instead, they contend that it will be less expensive for the defendants to litigate the two related cases in a single district, which happens to be their home state, than to litigate two cases simultaneously in two different states.  The court agrees that, to the extent potential witnesses in the two suits overlap, it will be more convenient and less costly for the witnesses appearing in this suit if they only have to appear and testify at one trial in the District of

---

[9]In their reply, plaintiffs contend that "Gustech employees with knowledge related to worker classification and compensation, whose testimony would be most important to the case, are probably based in South Carolina."  Ps. Reply 9.  But plaintiffs have failed to specify any particular witness for whom trial in South Carolina would be less costly and more convenient than trial in Texas, and, in any event, the third factor "primarily concerns the convenience of nonparty witnesses."  *USPG Portfolio Two, LLC*, 2011 WL 1103372, at \*4  (declining to consider parties' employees under the third factor).

South Carolina rather than testify on identical issues in trials in the District of South Carolina and this court. *See Research in Motion Ltd. v. Visto Corp.*, 2007 WL 1452092, at *3 (N.D. Tex. May 17, 2007) (Fitzwater, J.) ("The prospect of requiring each witness to appear twice to testify about the same issue weighs heavily in favor of transfer."). But because plaintiffs have failed to identify *any* witness who can be expected to testify in either case, the court concludes that this factor is neutral or weighs only slightly in favor of transfer.

D

The fourth private interest factor examines the practical problems that make trial of a case easy, expeditious, and inexpensive. Plaintiffs contend that the existence of multiple lawsuits involving the same issues is a "paramount" consideration when determining whether a transfer is in the interest of justice. They maintain that the fourth factor strongly supports transfer because the related South Carolina Action includes the same class members and "it will be more efficient and less expensive for the Defendants to litigate the two related cases in a single district, which happens to be their home state, than to have to litigate two cases simultaneously in two different states." Ps. Br. 7-8. Defendants respond that plaintiffs have failed to provide any evidence regarding practical problems that would affect the trial of the case; that the issues raised in the South Carolina Action involve a much broader potential class consisting of workers in multiple states, state subclasses, and state statutory and common law claims that are inapplicable to the plaintiffs in this lawsuit; and that because of the differences between the lawsuits, there is not necessarily a risk of inconsistent outcomes if the Texas lawsuit and the South Carolina Action proceed separately.

The court concludes that the bulk of defendants' arguments are more appropriately addressed in the context of the court's consideration of judicial economy.  *See infra* § VII. With respect to the fourth private interest factor, defendants do not disagree that it would be more efficient and less expensive to litigate both cases in the District of South Carolina than it would be to litigate the two cases simultaneously in two different states.  Nor do they disagree that litigating this matter in their home state will be less expensive than litigating it here.  The court therefore concludes that the fourth private interest factor weighs in favor of transfer.

VI

The court now turns to the public interest factors.

A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  In a footnote, plaintiffs contend that the Northern District of Texas has "by far the more congested caseload."  Ps. Br. 9-10 n.7.  They point to statistics showing that judges in this district have an average of 1,347 pending cases per active judge compared to 239 pending cases per active judge in the District of South Carolina.  Defendants respond that "it appears that the docket in the District of South Carolina might be less congested."  Ds. Br. 8.

"In determining whether one court's docket is more congested than another's, courts commonly consider the Federal Judicial caseload statistics."  *USPG Portfolio Two*, 2011 WL 1103372, at *5.  The most recent caseload statistics reported by the Director of the

Administrative Office of the United States Courts indicate that, during the 12-month period ending March 31, 2018, a total of 13,683 civil cases were pending in this court, and 3,612 civil cases were pending in the District of South Carolina. But civil caseload figures for the Northern District of Texas are somewhat misleading when measuring overall court congestion because there are several multidistrict litigation matters pending in this district, one of which involves literally thousands of cases. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K (Kinkeade, J.). The average per judge statistics are therefore skewed as a result. Even so, there is a disparity between the number of civil cases pending in this court and in the District of South Carolina, and the court agrees that judges in the District of South Carolina have a comparatively lighter civil caseload.

But when considering this factor, "the real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *In re Genetech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (internal quotation marks and citations omitted). The median time for disposition of all civil cases in this court for the 12-month period ending March 31, 2018 was 6.7 months; in the District of South Carolina, the median time was 8.7 months. Accordingly, although it appears that judges of the District of South Carolina have a lighter civil caseload compared to the judges of this court, civil cases are, on average, being handled faster in the Northern District of Texas than in the District of South Carolina. In any event, "case-disposition statistics may not always tell the whole story." *Id.* at 1347. The court regards this factor as neutral, and

- 13 -

it concludes that plaintiffs have not shown that comparative court congestion favors a transfer.

B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). Plaintiffs contend that so-called "local interests" favor trial in the location where the defendant has its corporate headquarters, but also recognize that this suit and the South Carolina Action were brought on behalf of Texas workers and that "as a result, Texas also has a local interest in the outcome of this lawsuit." Ps. Br. 9. Defendants respond that the work that plaintiffs performed, for which they seek to recover unpaid overtime pay, occurred in the Northern District of Texas; that GusTech has a local facility in Garland, Texas; and that plaintiffs do not offer any reason why the residents of the District of South Carolina would have a greater interest in the resolution of the plaintiff workers' FLSA dispute than would the residents of the Northern District of Texas. Defendants also contend that "[t]here is no proof that trying the case in the Northern District of Texas is a burden on the community or that the burden of trying the case in the Northern District is any more burdensome on the citizens of Dallas." Ds. Br. 8.

The court concludes that this factor is neutral. The work that plaintiffs performed, for which they seek to recover unpaid minimum wages and overtime pay, occurred in the

- 14 -

Northern District of Texas, but GusTech is headquartered in South Carolina. *See, e.g.,*

*Salinas*, 358 F.Supp.2d at 573 (concluding, in FLSA action, that the "events at issue" took

place at each store location where each plaintiff worked and at defendant's headquarters,

where defendant's payroll and time-keeping policies were allegedly formulated). Plaintiffs

do not offer any reason why the residents of the District of South Carolina would have a

greater interest in the parties' FLSA dispute than would the residents of the Northern District

of Texas.

C

The third factor addresses the familiarity of the forum with the law that will govern

the case. The fourth public interest factor considers the avoidance of unnecessary problems

of conflict of laws or the application of foreign law. The court holds that the third and fourth

factors are neutral. This court is familiar with FLSA law because it routinely handles cases

of this type. There are no apparent issues involving conflict of laws or the application of

foreign law.

VII

A

The parties devote a substantial portion of their briefs to the question whether a

transfer of this case to the District of South Carolina would promote judicial economy and

would therefore serve the interest of justice. Although judicial economy is not among the

- 15 -

list of enumerated private and public interest factors,[10] courts generally regard this as "a

paramount consideration when determining whether a transfer is in the interest of justice."

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also DataTreasury*

*Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 593-94 (N.D. Tex. 2003) (Kaplan, J.)

("Although the letter of section 1404(a) might suggest otherwise, it is well established that

'the interest of justice' is an important factor in the transfer analysis."). In *Continental Grain*

*Co. v. Barge FBL-585*, 364 U.S. 19 (1960), the Supreme Court observed:

> [t]o permit a situation in which two cases involving precisely the
> same issues are simultaneously pending in different District
> Courts leads to the wastefulness of time, energy and money that
> § 1404(a) was designed to prevent.  Moreover, such a situation
> is conducive to a race of diligence among litigants for a trial in
> the District Court each prefers.

*Id.* at 26.  Since *Continental Grain*, a number of courts, including this court, have held that

the existence of related litigation in a transferee court is a factor that weighs strongly in favor

of transfer.  *See, e.g., Front Row Techs., LLC v. MLB Advanced Media, L.P.*, 2012 WL

---

[10]Plaintiffs contend that the first public interest factor includes "the pendency of
related actions in the transferee's forum," and argue that when considering the first public
interest factor, courts have held that the existence of a related pending case in another district
weighs strongly in favor of transfer.  Ps. Br. 8 (quoting *Greater Yellowstone Coal. v.
Kempthorne*, 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008)).  While the court does not
disagree that the pendency of the South Carolina Action is an important consideration in
deciding whether to transfer this case, it addresses the parties' arguments in this respect
separately, rather than in the context of any of the private or public interest factors.  *See, e.g.,
Summit 6 LLC v. HTC Corp.*, 2014 WL 4449821, at *11 (N.D. Tex. Sept. 10, 2014)
(O'Connor, J.) (addressing "judicial economy" separately from the private and public interest
factors); *H-W Tech., L.C. v. Apple, Inc.*, 2012 WL 3072776, at *11 (N.D. Tex. July 5, 2012)
(Ramirez, J.) (same), *rec. adopted*, 2012 WL 3079088 (N.D. Tex. July 27, 2012) (Fish, J.).

12044383, at *2 (N.D. Tex. Dec. 17, 2012) (Kinkeade, J.) ("The existence of related litigation in a transferee court is a factor that strongly supports transfer." (citing *DataTreasury*, 243 F.Supp.2d at 594)); *Ashton v. Knight Transp., Inc*., 2009 WL 2407829, at *5 (N.D. Tex. Aug. 6, 2009) (Boyle, J.) (denying motion to transfer, but noting that "[i]n order to maximize efficiency, courts may transfer cases for the purposes of consolidating simultaneously pending actions that are based on the same issues." (citing *Continental Grain Co.*, 364 U.S. at 26)); *Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, 2003 WL 298799, at *5 (N.D. Tex. Feb. 10, 2003) (Kaplan, J.) (denying motion to transfer, but noting that "[a] transfer in 'the interest of justice' is appropriate where related cases involving the same issues are pending in another court.").

B

Plaintiffs maintain that a transfer to the District of South Carolina will serve the interests of justice because the South Carolina Action will address all of the questions raised in this lawsuit, including whether GusTech's satellite installation technicians were misclassified under the FLSA as independent contractors. They also contend that "[i]nconsistent rulings in this district and in the District of South Carolina would produce a non-sensical outcome for the parties, whose minimum wage and overtime claims are based on federal law that should be uniformly applied across jurisdictions." Ps. Br. 9.

Defendants respond that the issues raised in the South Carolina Action involve a much broader potential class consisting of workers in multiple states, state subclasses, and state statutory and common law claims that are inapplicable to the plaintiffs in this lawsuit;

- 17 -

because of the differences between the lawsuits, there is not necessarily a risk of inconsistent outcomes if the Texas lawsuit and the South Carolina Action proceed separately;  the Fifth Circuit and the Fourth Circuit use similar, but not identical, tests to determine whether a worker is an independent contractor or employee; plaintiffs' declarations do not address whether GusTech has uniform policies and procedures in all four states (North Carolina, South Carolina, Florida, and Texas); "it would not be unexpected that a court in one jurisdiction could find the workers are independent contractor[s] based on the practices or policies in that locale and another court find that the workers are not independent contractors based on the specific practices that occur in their workplace," Ds. Br. 12; there are numerous facts that, when viewed in their totality, determine the status of the relationship, and plaintiffs have failed to establish that these facts are the same in Texas and in the other three localities covered by the South Carolina Action; and because plaintiffs have not established uniformity as to the pertinent facts, this case should not be transferred and consolidated with the South Carolina Action, and, in fact, a transfer may have the effect of resulting in the complication and confusion of the issues with respect to the status of workers in the different states.

Plaintiffs reply that the presence of additional state-law claims in the South Carolina Action does not alter the federal claims in any way; the state-law claims in the South Carolina Action raise the same underlying question as the FLSA claims, i.e., whether plaintiffs should be classified as employees or independent contractors; the two cases will require identical sources of proof, including factual development responsive to the FLSA's economic reality test for independent contractor status that is specific to GusTech's Texas

workers; because the alleged FLSA violations in both cases will stem from defendants' policy documents classifying workers as independent contractors and evidence of the economic reality of workers' relationship with GusTech, much of the proof adduced in the two suits will likely be identical; despite the Fifth and Fourth Circuits' different articulations of the economic reality test, the federal courts are a single system applying a single body of law; there is a significant overlap between the parties in the two cases; the inclusion of plaintiffs in one suit in the broader proposed collective of a second suit strongly favors consolidation because the consolidated suit would include all original parties in their original postures; and FLSA cases involving overlapping, but not identical, classes of plaintiffs are frequently transferred when different plaintiffs seek to hold the same defendant liable for the same alleged violations.

## C

The court concludes that considerations of judicial economy weigh in favor of transfer.  If the FLSA classes in the South Carolina Action and in this action are conditionally certified, there will be an overlap in parties and claims for all Texas plaintiffs who wish to opt in.  Not only would it waste judicial resources to try identical FLSA claims against the same defendants in two different fora, there is a significant risk of inconsistent rulings if, for example, a judgment for the defendants is entered in one action but a judgment against the defendants is entered in another.  Under similar circumstances, one district court explained:

> [t]he defendant is located in Texas and it is reasonable to assume
> that witnesses, relevant documents and records are located there.
> Substantial economies can be achieved by considering both
> cases together rather than separately.  While this court cannot
> predict with certainty whether the cases will be consolidated in
> Texas, there appears to be no reason why the opportunity to do
> so should be denied and the same questions litigated by
> American and by pilots represented by the same counsel in
> federal courts 1000 miles apart.

*Johnson v. Am. Airlines, Inc*., 1981 U.S. Dist. LEXIS 13215, at *3-4 (N.D. Ill. June 2, 1981).

Here, defendants are located in South Carolina, substantially similar FLSA claims against

the defendants are pending there, and if the proposed FLSA classes are conditionally certified

in this and the South Carolina Action, the same questions—i.e., whether GusTech and

Santamaria violated the FLSA with respect to their Texas satellite service and repair

technicians—will have to be litigated in both courts.  The court finds that, in addition to the

various individual private and public interest factors favoring transfer, the overall interest of

justice is best served by transferring this case to the District of South Carolina.

VIII

    Considering all of the relevant factors holistically, the court concludes that this case

should be transferred to the District of South Carolina.  Defendants are both located in South

Carolina, and it is likely that evidence relevant to this case will be located at GusTech's

corporate headquarters there.  Moreover, because plaintiffs are seeking to transfer this action

to the defendants' home forum, this is not an instance in which the party seeking transfer is

merely attempting to shift the inconvenience of the venue from one party to the other.  *See*

*Fowler*, 2001 WL 184237, at *6 (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656

F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987) (Fitzwater, J.)).  Of the other private and public interest factors, most are neutral and none weighs more heavily in favor of retaining this case in the Northern District of Texas.  Finally, considerations of judicial economy weigh strongly in favor of transfer.  The South Carolina Action—which involves a nearly identical FLSA claim brought against the same defendants by a proposed class that will overlap with the class proposed in this case—is pending in the District of South Carolina, and it will be more efficient and less expensive for all of the parties involved if this case is litigated in a single district, the District of South Carolina, than if these related cases were tried in two different district courts, located over 1,000 miles apart.  Accordingly, having weighed the private and public interest factors and considering the interests of justice, the court concludes that this case should be transferred to the District of South Carolina for the convenience of the parties and witnesses, in the interest of justice.

\*   \*   \*

Accordingly, the court grants plaintiffs' motion to transfer, and transfers this action to the District of South Carolina under 28 U.S.C. § 1404(a).  The clerk of court is directed to effect the transfer according to the usual procedure.

**SO ORDERED**.

July 24, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE